# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3469

_____

Anderson-Tully Company,              *
                                     *
            Appellant,               *
                                     *    Appeal from the United States
      v.                             *    District Court for the
                                     *    Eastern District of Arkansas.
Dustin McDaniel, Attorney General    *
of the State of Arkansas,            *
                                     *
            Appellee.                *

_____

Submitted: June 9, 2009
Filed: July 7, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Anderson-Tully Company (ATCO) appeals the district court's[1] dismissal of its suit against the Arkansas Attorney General, Dustin McDaniel. In its suit, ATCO asserted ownership of two bodies of water within the state of Arkansas which McDaniel has asserted are public waters. ATCO sought to quiet title and enjoin McDaniel from attempting to claim the disputed waters for public use by application of the recreational use test of navigability. We affirm the district court's dismissal.

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

# I

ATCO owns a large tract of land in Desha County, Arkansas, located next to the Mississippi River. Stimson Lake Land & Timber Co., LLC (Stimson Land), owns an adjoining tract of land. Included within the two entities' tracts of land is a lake called Stimson Lake, as well as a three-mile river chute called Stimson Chute. Stimson Chute connects the lake to the Mississippi River during times of high water, when the river backs into Stimson Lake through the chute.

When Arkansas first became a state, the area of land now occupied by the lake and chute were "fast land." "Fast land" refers to land that is above or landward of the existing high water mark, as opposed to "submerged land" which refers to land that is below the existing high water mark. Over the years, however, the Mississippi River migrated westward until the 1930s, then began migrating back eastward, and in the process created Stimson Lake.

ATCO leases its land to Stimson Land and Little Mozart Hunting Club. For many years, the Hunting Club had the quiet enjoyment of hunting, fishing, and other recreation on and around Stimson Lake and Stimson Chute. In January 2008, however, a duck hunter contacted the Arkansas Attorney General's office seeking confirmation of his right to hunt and fish below the ordinary high water mark of the lake and chute, indicating he was "being threatened with arrest if [he hunted]" there. App. at 239. Charles Moulton, an assistant attorney general, sent the hunter an email stating:

> So if this lake/chute has a water connection to the [Mississippi] (even part of the year), has a history of public use, and where you hunt is below the ordinary high water mark, then I would say it's navigable and you have every right to be there.

Id. at 238.

Although the record is unclear, the hunter apparently took the Attorney General's office at its word and went hunting, because Stimson Land (but not ATCO) subsequently filed a civil trespass action in the Circuit Court of Desha County against "trespassers" duck hunting on Stimson Lake.  McDaniel filed a motion to intervene in the suit asserting ownership of Stimson Lake and Stimson Chute pursuant to the recreational use doctrine of navigability adopted by the Arkansas Supreme Court in State v. McIlroy, 595 S.W.2d 659 (Ark. 1980).

Not being a party to the state court action filed by Stimson Land in state court, ATCO elected to bring its own action against McDaniel in federal district court. Stimson Land then nonsuited its state court action before the state court ruled on McDaniel's motion to intervene, leaving ATCO's federal suit as the only pending suit.

In its federal suit, ATCO alleged a deprivation of its federal constitutional rights under 42 U.S.C. § 1983 and sought a declaration that the Arkansas Supreme Court's adoption of the recreational use doctrine of navigability in McIlroy violated the federal constitution.  The suit also sought to quiet title in Stimson Lake and Stimson Chute.  In addition, ATCO sought "to enjoin the Attorney General from attempting to take private property for public use by application of the recreational use test of navigability."  App. at 6.  An amended complaint later filed by ATCO similarly sought injunctive relief.  Id. at 19.

McDaniel moved to dismiss the federal suit on the basis of, among other things, sovereign immunity under the Eleventh Amendment.  He relied primarily upon the Supreme Court's decision in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), which held that a quiet title action – and claim for injunctive relief – brought by the Coeur d'Alene Tribe of Idaho against the State of Idaho and various of its state officials alleging ownership of the submerged lands and lake bed of Lake Couer d'Alene was barred by the Eleventh Amendment.

-3-

The district court granted the motion to dismiss, but without directly addressing McDaniel's claim of sovereign immunity. Instead, the district court concluded:

> This case is not ripe for decision. A suit under 42 U.S.C. § 1983 requires state action, and at this point, none has occurred. It seems to me that a state court must first determine who owns the land in question before any § 1983 claim would present itself. I cannot decide if Defendant has acquired this land unfairly and in violation of § 1983 if no determination has been made to rightful ownership. Plaintiff's suit is the "functional equivalent of a quiet title action" which raises an issue that "implicates special sovereignty interests." . . . An Arkansas state court should determine who owns the property before there can be any analysis under § 1983.

Anderson-Tully Co. v. McDaniel, No. 5:08-CV-0134-WRW, 2008 WL 4372448, at *1 (E.D. Ark. Sept. 23, 2008) (quoting Coeur d'Alene, 521 U.S. at 281).

The district court also denied all pending motions, which included a motion by ATCO to amend its complaint, as moot. ATCO subsequently brought a motion for reconsideration under Rules 59 and 60 of the Federal Rules of Civil Procedure, which the district court summarily denied. ATCO then filed this timely appeal contending the case is ripe and is not barred by the Eleventh Amendment.

II

We review the district court's grant of a motion to dismiss de novo. Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009).

ATCO first asserts the district court erred in concluding this case is not ripe for adjudication. We agree. Both ATCO and McDaniel assert ownership of Stimson Lake and Stimson Chute, clearly putting title in dispute as between the two parties. While Article III would prohibit us from issuing an advisory opinion upon a

"hypothetical" set of facts, KCCP Trust v. City of N. Kansas City, 432 F.3d 897, 899 (8th Cir. 2005), Arkansas has done more than "hypothetically" assert ownership of Stimson Lake and Stimson Chute. This is not a case where ATCO's quiet title action "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). Instead, ATCO's action rests upon events which have already occurred, i.e., the Attorney General has stated Stimson Lake and Stimson Chute are public waters. That is enough to give rise to a live controversy and to make this case ripe for adjudication. See, e.g., Employers Ass'n, Inc. v. United Steelworkers, 32 F.3d 1297, 1299 (8th Cir. 1994) ("Ripeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged [action], and that the injury would be redressed by the relief requested.").[2]

Although we believe the district court was mistaken about the ripeness of this controversy, we must still affirm because we are convinced the district court reached the correct result. Helvering v. Gowran, 302 U.S. 238, 246 (1937). The suit against McDaniel in his official capacity as Arkansas's Attorney General is barred by the Eleventh Amendment. See Coeur d'Alene, 521 U.S. at 287-88 (concluding states have sovereign immunity under the Eleventh Amendment from suits which are the functional equivalents of a quiet title action, including any claims for injunctive relief); see also W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18 (2d Cir. 2004) (applying Coeur d'Alene and concluding quiet title action against the Governor of New York was barred by Eleventh Amendment immunity); Ysleta Del Sur Pueblo v. Laney, 199 F.3d 281 (5th Cir. 2000) (applying Coeur d'Alene and concluding

---

[2]We note that those cases indicating *takings* claims are not ripe for adjudication in federal court until they have been exhausted in state administrative and judicial proceedings, e.g., Johnson v. City of Shorewood, Minn., 360 F.3d 810 (8th Cir. 2004), are inapposite because ATCO has not asserted a takings claims, i.e., ATCO does not want fair compensation from the state, but instead wants to quiet its title to the lake and chute and enjoin McDaniel from claiming the same are public waters.

federal lawsuit seeking to eject state officers from land they allegedly occupied in violation of federal law was barred by Eleventh Amendment immunity); MacDonald v. Vill. of Northport, Mich., 164 F.3d 964 (6th Cir. 1999) (applying Coeur d'Alene and concluding the Eleventh Amendment barred a federal lawsuit against the Michigan State Treasurer seeking a declaration that the plaintiffs owned a right-of-way which provided access to navigable waterway).

ATCO urges us to ignore its quiet title action and still address its request for injunctive relief under the exception to sovereign immunity established in Ex parte Young, 209 U.S. 123 (1908), for claims seeking injunctive relief against state officials alleged to be violating federal law. Coeur d'Alene, however, also involved a request for injunctive relief. In addressing such claim, the Supreme Court said "[a]lthough the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex parte Young will not in many instances be that between day and night, *this suit*, we decide, falls on the Eleventh Amendment side of the line, and Idaho's sovereign immunity controls." Coeur d'Alene, 521 U.S. at 281 (internal citations and quotation marks omitted) (emphasis added).

The Supreme Court's reference to "this suit" meant the functional equivalent of a quiet title action against a state, which implicated a state's "special sovereignty interests" involving the navigability of waters or the state's control over submerged lands. See id. at 281-83. This case involves those exact issues. As a result, we see little wiggle room for concluding Coeur d'Alene does not control the outcome in this case; *this suit* also falls on the Eleventh Amendment side, and Arkansas's sovereign immunity controls.

ATCO contends Couer d'Alene is distinguishable because the Coeur d'Alene Tribe was suing to *obtain* recognition of its ownership of the lake bed and submerged lands, whereas in this case ATCO is suing to *retain* recognition of its ownership of the disputed waters. A close examination of Coeur d'Alene, however, indicates the

decision did not turn upon such a distinction. Indeed, the Supreme Court recognized the Tribe "claimed ownership of the submerged lands pursuant to unextinguished aboriginal title," id. at 265, similar to the long-standing fee title ownership ATCO asserts in this case. As the Supreme Court noted, however, that issue went to the merits of the dispute, an issue not before the Court:

> Our recitation of the ties between the submerged lands and the State's own sovereignty, and of the severance and diminishment of state sovereignty were the declaratory and injunctive relief to be granted, is not in derogation of the Tribe's own claim. As the Tribe views the case, the lands are just as necessary, perhaps even more so, to its own dignity and ancient right. The question before us is not the merit of either party's claim, however, but the relation between the sovereign lands at issue and the immunity the State asserts.

Id. at 287; see also Union Elec. Co. v. Mo. Dept. of Conservation, 366 F.3d 655, 658 (8th Cir. 2004) (indicating our "inquiry into whether the Ex Parte Young fiction avoids the Eleventh Amendment's bar to suits against the States does not include an inquiry into the merits of the claim," but does allow us to "question whether the suit and the remedy it seeks 'implicate[] special sovereignty interests' such that an Ex Parte Young action will not lie." (quoting Coeur d'Alene, 521 U.S. at 281)).

## III

This case is barred by the Eleventh Amendment. The Ex Parte Young exception does not apply. This suit involves claims which must be brought in state court. We therefore affirm the district court's dismissal.

_____