# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2697

_____

Kristin Hill Brasser Kuelbs;     *
Kristin N. Kuelbs Irrevocable     *
Trust,     *
    *
        Appellants,     *
    *
      v.     *    Appeal from the United States
    *    District Court for the
Kimberly Hill; Jeffrey Hill; Carol     *    Western District of Arkansas.
Hill; Lynn Welk (Hill); Lawrence     *
Welk, Jr.; Ryan Benson; American     *
Century Services, LLC; American     *
Century Investments; Rita Abernathy;     *
Anne Tuttle; John Does 1-10,     *
    *
        Appellees.     *

_____

Submitted: April 13, 2009
Filed: July 30, 2010

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Kristin Kuelbs and the Kristin N. Kuelbs Irrevocable Trust appeal the dismissal of the claims they brought against several defendants alleging embezzlement of Kuelbs's assets. The claims brought by Kuelbs were dismissed because the district

court[1] determined she was not the proper party to pursue the action due to her incompetency, and she did not move to substitute the proper party after being put on notice of the need for substitution. The tort claims Kuelbs assigned to the Irrevocable Trust were dismissed on the grounds they were not assignable under Arkansas law. We affirm.

I

Kuelbs suffered a brain injury in a car accident in March 2001. Her subsequent behavior caused problems in her marriage, and her husband divorced her in December 2005. She received a property settlement in excess of $250,000, and an ongoing award of monthly spousal support. Her ex-husband received custody of the couple's two daughters, with Kuelbs entitled to visitation every other weekend. After the daughters expressed concerns about their mother's behavior while they were in her care, Kuelbs's ex-husband successfully petitioned the divorce court to have Kuelbs's visitation rights limited to supervised visitation. Members of Kuelbs's family also became concerned about her erratic behavior. Her mother (Carol Hill), a sister (Kimberly Hill), and a brother (Jeffrey Hill) petitioned a Wisconsin state court to have Kuelbs committed to a mental facility. In November 2006 she was committed to a mental facility for a period of six months.

While in the mental facility, Kuelbs contacted her oldest brother, Donald Hill, a lawyer, and asked for help in obtaining her release. A Wisconsin court determined Kuelbs could receive care in a less restrictive setting, and released her to Donald based on his representation he could provide her with shelter, food, and medical support at his home in Arkansas. Kuelbs moved to Arkansas to live with Donald and his wife, Dena, on February 19, 2007.

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

After Kuelbs moved to Arkansas, Donald discovered some irregularities in her American Century Investment account, the account in which her property settlement had been placed. A check dated February 21, 2007 (after Kuelbs had already moved to Arkansas) was purportedly signed by her and made payable to her brother, Jeffrey Hill, in the amount of $73,000. The check had "House Construction Deposit" written in the memo line.[2] Two other checks were also suspect in that they were written or cashed when Kuelbs was in the mental facility in Wisconsin. One check, dated October 28, 2006, was in the amount of $13,738.75 and made payable to Burnsville Volkswagen. Another check, dated November 24, 2006, was in the amount of $23,225.54 and made payable to Chase.

A dispute arose between Donald and the rest of Kuelbs's family about her well-being, with both sides accusing the other side of taking advantage of her. For example, in August 2007, Lynn Welk, another of Kuelbs's sisters, contacted the police department in Hot Springs Village, Arkansas, asking them to conduct a welfare check on Kuelbs. Welk wanted the police to tell Kuelbs her checking account with American Century Investments had been emptied. She also asked the police to positively identify Kuelbs before relaying the message, claiming her sister-in-law, Dena, posed as Kuelbs at times. Welk claimed Kuelbs was not taking her medication and was not mentally stable. When the police tried to conduct a welfare check, Kuelbs refused to talk to the officers and called the police. She still refused to talk to the officers even when the dispatcher confirmed the officers were police officers.

In November 2007, Kuelbs's sister Kimberly filed a petition in Arkansas state court requesting a determination of Kuelbs's mental competency. While the competency action was pending, Donald filed this action in Arkansas state court against his mother Carol, brother Jeffrey, sisters Kimberly and Lynn, brother-in-law

---

[2]From the record it appears Jeffrey Hill and his brother-in-law, Lawrence Welk, Jr., used the $73,000 to purchase a property at 2888 Sibley Hills Drive in Eagan, Minnesota, which they developed into a subdivision called "Sammy Sweet Cheeks."

-3-

Lawrence Welk, Jr., American Century, and others alleging tort claims of outrage, abuse of process, fraud/misrepresentation, deceit, breach of fiduciary duty, and civil conspiracy. The gravamen of the suit alleged a conspiracy between the family members and others to embezzle Kuelbs's money, and included allegations against Jeffrey Hill regarding the three suspect checks written on the American Century Investment account. The suit was brought in Kristin Kuelbs's name personally, as well as in the name of an "Irrevocable Trust" Donald created for the purpose of accepting an assignment of Kuelbs's tort claims.

Shortly after Donald commenced this suit, Kuelbs was declared incompetent pursuant to the petition filed by her sister, Kimberly. The state court initially appointed the Trust Department of First National Bank in Hot Springs as the guardian of Kuelbs's estate. Later, the Community First Trust Company (First National Bank's trust subsidiary) was substituted as the guardian of her estate. The court initially appointed an individual by the name of Valerie Swearingen to be a limited guardian of Kuelbs's person. The court subsequently changed the guardian of Kuelbs's person a number of times.

The defendants in this action removed it from Arkansas state court to federal district court and filed motions to dismiss asserting lack of personal jurisdiction. The defendant members of the Hill family further asserted the action should be dismissed because Kuelbs and the Irrevocable Trust were not the proper parties due to Kuelbs's incompetency.

Donald then requested leave of court to file an amended complaint, and was granted leave. To the tort claims originally asserted in the first complaint, he added claims for civil racketeering under the federal RICO statute, 18 U.S.C. § 1961, and a securities claim under Ark. Code Ann. § 23-42-103. The amended complaint responded to some, but not all, of the defendants' personal jurisdiction assertions. It failed, however, to address the contention that Kuelbs and the Irrevocable Trust were

not proper parties. All of the defendants responded to the amended complaint by renewing their motions to dismiss and arguing, in relevant part, that Kuelbs and the Irrevocable Trust were not the real parties in interest because Kuelbs had been declared incompetent.

On April 14, 2009, the district court entered an order which stated in part that the amended complaint "failed to address Defendants' contention that Plaintiffs lack the capacity to sue and are not authorized to bring this action due to the appointment of a guardian in Garland County Circuit Court. Plaintiffs are directed to supplement their responses by April 27, 2009, to address this issue[.]" On April 22, 2009, Donald filed a response which raised issues regarding a purported conflict of interest involving the guardian of Kuelbs's person, but which failed to discuss or address whether the guardian of Kuelbs's estate may be the proper party to pursue a lawsuit seeking monetary damages.

On June 17, 2009, the district court granted the motions to dismiss. The district court indicated the plaintiffs had been given notice the defendants had objected to their status as the real parties in interest, and no attempt was thereafter made to substitute the real party in interest. The district court further determined the tort claims purportedly assigned to the Irrevocable Trust were not assignable under Arkansas law, and thus the Irrevocable Trust was not a proper party either. This timely appeal followed.

II

We review a district court's decision to grant a motion to dismiss de novo. See, e.g., Anderson-Tully Co. v. McDaniel, 571 F.3d 760, 762 (8th Cir. 2009).[3] We also

[3]When dismissal is granted on the grounds a suit is not being prosecuted by the real party in interest, at least one court has applied abuse-of-discretion review to the ultimate question whether dismissal of the action was appropriate. See Magallon v.

review de novo both the district court's interpretation of the Federal Rules of Civil Procedure, Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 374 (8th Cir. 1999), as well as its interpretation of Arkansas state law. Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 923 (8th Cir. 2006).

We first address who became the real party in interest after Kuelbs was declared incompetent.[4]  "In a diversity action, state law determines the issue of who is a real party in interest." Jaramillo v. Burkhart, 999 F.2d 1241, 1246 (8th Cir. 1993).  When Kuelbs was declared incompetent, the state court appointed both a guardian of her person and a guardian of her estate.  When a guardian of the estate is appointed, Arkansas law requires the guardian of the estate to pursue a lawsuit seeking monetary damages that will benefit the incompetent person's estate.  See Ark. Code Ann. § 28-65-305 ("When there is a guardian of the estate, all actions between the ward . . . and third persons in which it is sought to . . . benefit the estate of the ward *shall* be prosecuted by . . . the guardian of the estate[.]") (emphasis added).  At all relevant times, the Community First Trust Company was the guardian of Kuelbs's estate, and thus was the real party in interest for purposes of pursuing the tort claims in this case. The district court therefore correctly determined Kuelbs was not the real party in interest.[5]  The district court also correctly determined the Irrevocable Trust was not the real party in interest, because neither tort claims nor the proceeds of tort claims are

---

Livingston, 453 F.3d 268, 271 (5th Cir. 2006) (reviewing de novo the preliminary question whether a party is a real party in interest, but then reviewing whether dismissal of the action was appropriate for an abuse of discretion).  Because we conclude the district court properly dismissed this action even under the more stringent de novo standard, we do not need to decide whether an abuse-of-discretion standard should apply.

[4]The pending motion to supplement the record is granted.

[5]The appellants' contentions regarding purported conflicts-of-interest involving the guardian of Kuelbs's person are irrelevant, because the personal guardian is not the real party in interest.  As a result, there is no need to address the contentions.

assignable under Arkansas law.  See Mallory v. Hartsfield, Almand & Grisham, LLP, 86 S.W.3d 863, 866 (Ark. 2002).

The appellants argue that, even assuming the guardian of the estate was the real party in interest, the district court still erred in dismissing this action.  They contend that substituting the guardian of the estate was permissive, rather than mandatory, under Arkansas law.  See Ark. Code Ann. § 16-61-107 ("Where a party is judicially found to be of unsound mind during the pendency of an action . . . his or her guardian *may* be joined with him or her in the action as such.") (emphasis added).  This reliance upon Arkansas law is misplaced.  Although Arkansas law governed who the real party in interest became after Kuelbs was declared incompetent, federal law governs the substitution procedure the district court followed.  See, e.g., Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (indicating federal procedural rules apply to procedural issues in diversity actions, while state law applies to substantive issues).  The federal rules are not permissive, but mandatory, in requiring an action to be prosecuted by the real party in interest.  See Fed. R. Civ. P. 17(a) ("An action *must* be prosecuted in the name of the real party in interest.") (emphasis added).

Rule 25 of the Federal Rules of Civil Procedure sets forth the substitution procedure to be followed when a party becomes incompetent while an action is pending.  The rule governs four situations: (1) when a party dies, (2) when a party becomes incompetent, (3) when a party transfers its interest in the lawsuit to someone else, and (4) when a public officer is a party and dies, resigns, or otherwise ceases to hold office.  See Fed. R. Civ. P. 25(a), (b), (c) and (d).  A party's obligation to request substitution, and the corresponding ability of the court to allow substitution, are somewhat different in each situation.  While our concern is only with the second situation, a party's obligation to bring a substitution motion in that situation (and the corresponding limits on the court's authority) becomes more evident by comparing all four situations to each other.

When a party dies, a motion for substitution must be brought before the court may order substitution, and "[i]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must* be dismissed." Id. at 25(a)(1) (emphasis added). Similarly, when a party becomes incompetent, a motion for substitution is required before a court may order substitution. See id. at 25(b) ("If a party becomes incompetent, the court may, *on motion*, permit the action to be continued by or against the party's representative.") (emphasis added). Thus, when reading Rule 25(b) in conjunction with Rule 17(a)'s requirement that an action *must* be prosecuted by the real party in interest, the court has no power to permit such an action to continue without the real party in interest unless a motion for substitution is brought under Rule 25(b). Cf. Younts v. Fremont County, Iowa, 370 F.3d 748, 752 (8th Cir. 2004) (construing Rule 25(a) and explaining that "a motion for substitution must be filed by the proper person [in order for] a court to order a substitution of a proper party," and directing the district court to dismiss the claims brought by a party who died while the action was pending if a "motion for substitution under Rule 25 [is] not filed promptly with the district court[.]").

In contrast, if a party transfers an interest while a case is pending, "the action may be continued by or against the original party[.]" Fed. R. Civ. P. 25(c). While the court, upon motion, may order "the transferee to be substituted in the action or joined with the original party," id., a substitution motion is not required for the action to continue. Similarly, when a party is a public officer who dies, resigns, or otherwise ceases to hold office while a case is pending, a substitution motion is not required. Rather, "[t]he officer's successor is automatically substituted as a party" and "the absence of [a substitution order] does not affect the substitution." Id. at 25(d).

In sum, in an action in which a party becomes incompetent while the action is pending, a motion for substitution must be brought under Rule 25(b) for the action to continue. Consequently, a district court does not err in dismissing such an action after

-8-

an objection has been made that the person deemed incompetent is not the real party in interest, so long as the district court allows a reasonable time for the real party in interest to be substituted.  See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."); see also Consul Gen. of Republic of Indonesia v. Bill's Rentals, Inc., 330 F.3d 1041, 1047-48 (8th Cir. 2003) (computing the "reasonable time" under Rule 17(a)(3) from the time an objection is first made until the district court enters an order dismissing the case).

The defendant members of the Hill family contended Kuelbs was not the real party in interest in their first motion to dismiss filed on December 19, 2008.  On April 14, 2009, the district court  directed the plaintiffs to address the issue of Kuelbs's incompetency.  The order put the plaintiffs on notice that a substitution motion may be required, and gave them time to substitute the real party.  On June 17, 2009, six months after the Hill defendants first objected that Kuelbs and the Irrevocable Trust were not the real parties in interest, the district court dismissed the action because a substitution motion still had not been filed.[6]  The procedure followed by the district court was consistent with, and required by, Rules 17 and 25 of the Federal Rules of Civil Procedure.  Thus, the district court did not err in dismissing this action.

III

We affirm the judgment of the district court.

_____

---

[6]The appellants do not argue on appeal that six months was not a "reasonable time" under Rule 17(a)(3), and thus we do not address that issue.