2010 Ark. App. 793

**Kristin KUELBS, Donald Hill, and Edwardena Hill, Appellants**

v.

**Kimberly HILL, Appellee.**

**No. CA 09–931.**

Court of Appeals of Arkansas.

Dec. 1, 2010.

See also, 2010 Ark. App. 427, 379 S.W.3d 47.

Justin Byrum Hurst, Hurst, Morrissey & Hurst, PLLC, and Donald C. Hill, Attorney at Law, Hot Springs, for appellant.

Steven W. Quattlebaum, Jennifer Wethington Merritt, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, and Tylar Charles Marshall Tapp, III, Hot Springs, for appellee.

ROBERT J. GLADWIN, Judge.

This is the latest in a series of appeals involving the guardianship of Kristin Kuelbs, an incapacitated adult.[1] In this appeal, Kristin's brother and sister-in-law, appellants Donald and Edwardena Hill, challenge several orders entered by the Garland County Circuit Court between March 5, 2009, and April 9, 2009, including an order that appointed Kristin's sister,

appellee Kimberly Hill, as Kristin's guardian. For the reasons set forth below, we affirm the court's orders.

## I. *Procedural history*

In 2001, Kristin Kuelbs suffered head injuries in a car accident. Several years later, Kimberly and two other family members told a Wisconsin court that Kristin had poured hot coffee on one of her sisters and had talked about shooting certain family members and killing herself. A Wisconsin mental-health facility evaluated Kristin for approximately three months and decided in early 2007 to release Kristin to Donald's care in Hot Springs.

On November 20, 2007, Kimberly, a Minnesota resident, filed a petition in Garland County Circuit Court seeking appointment as Kristin's guardian. Kimberly stated that Kristin suffered from physical and mental disabilities and lacked the capacity to care for herself. Donald in turn sought conservatorship of Kristin and accused Kristin's other family members of "swindling" her assets.[2] Dr. Paul Deyoub performed a court-ordered psychological evaluation of Kristin and determined that her mental illness, which manifested in raging anger, hostility, and the potential for physical violence, required admission to an in-patient psychiatric facility. Dr. Deyoub also stated that Kristin needed a guardian of her person and estate but that the guardian should not be a family member. The doctor testified to his findings at an August 28, 2008 hearing.

On October 8, 2008, the circuit court appointed social worker Valerie Swearingen as the guardian of Kristin's person and First National Bank of Hot Springs as the guardian of her estate. Thereafter, Donald, as a newly licensed attorney, ap-

---

1. We previously issued opinions in *Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47 (*Kuelbs I*) (affirming in part, dismissing in part), and *Kuelbs v. Hill*, 2010 Ark. App. 412 (*Kuelbs II*) (ordering rebriefing and supplementation of the record).

2. Most pleadings that Donald filed were also filed on behalf of his wife, Edwardena. For convenience, we will refer only to Donald in this opinion.

pealed on behalf of himself and Kristin, challenging the court's guardianship ruling, the validity of Dr. Deyoub's diagnosis, and several other intermediate rulings. We affirmed in part and dismissed in part in *Kuelbs I, supra.*

While the appeal in *Kuelbs I* was pending, the circuit court continued to hold hearings and enter orders concerning Kristin's guardianship. In December 2008 and January 2009, the court disqualified Donald as Kristin's attorney;[3] relieved Swearingen as the guardian of Kristin's person; appointed Donald as the guardian of Kristin's person; and commanded Donald to admit Kristin to Bridgeway within ten days for in-patient evaluation and treatment. When Donald did not admit Kristin as directed, the court entered orders on March 6 and 9, 2009, finding that Kristin was a danger to herself or others and that law-enforcement officers should take her into custody and transport her to Bridgeway. The officers did so on March 10, 2009. The court then entered an order on March 19, 2009, finding that Donald had failed to comply with the court's directives; that Donald should be removed as the guardian of Kristin's person; and that Kimberly should be appointed in his stead. Kimberly subsequently moved Kristin to the Mayo Clinic in Minnesota, and the court restricted Donald's access to Kristin, leaving it to the Clinic's discretion. This appeal followed.

## II.  *Orders entered after first appeal*

We first address Donald's argument that the circuit court lacked the authority to continue its proceedings after the appeal was filed in *Kuelbs I.* Donald relies on Arkansas Code Annotated section 28–1–

116 (Repl.2004), which is a portion of our Probate Code that applies to guardianship cases. *See* Ark.Code Ann. § 28–65–103(a) (Repl.2004). Subsection (e)(1) of section 28–1–116 reads as follows:

> An appeal shall stay other proceedings in the circuit court except when and to the extent that the court finds that no interested person will be prejudiced and by order permits other proceedings to be had.

Under this section, "a court may not proceed further in a probate case when an appeal has been taken *unless* it makes a finding that no one will be prejudiced and *by order* permits additional proceedings." *Nat'l Union Fire Ins. Co. v. Standridge,* 299 Ark. 91, 92, 771 S.W.2d 22, 23 (1989) (emphasis in original).

Several proceedings in the present case occurred after March 2, 2009, the date on which Donald filed his record with our court in *Kuelbs I.* Further, the circuit court conducted those proceedings without finding that no interested person would be prejudiced thereby. Accordingly, Donald argues, the circuit court violated section 28–1–116(e)(1), and the orders from which he appeals, entered between March 5, 2009 and April 9, 2009, should be vacated.[4] We conclude, however, that subsection (e)(1) should not be rigidly applied to all proceedings in this guardianship case.

First, the court's orders required Donald to transport Kristin to Bridgeway within a specified time period. When that did not occur, the court delegated law-enforcement officers to pick up Kristin and take her to Bridgeway, and the court removed Donald as guardian based on his violation of the court's orders. The circuit judge was therefore grappling with a situ-

---

3.  Kristin continued to be represented by her attorney ad litem.

4.  Donald's precise argument is that the circuit court lost jurisdiction once he filed his

notice of appeal in *Kuelbs I* in October 2008. But a trial court retains jurisdiction until the record is lodged on appeal. *Alexander v. First Nat'l Bank of Ft. Smith,* 278 Ark. 406, 646 S.W.2d 684 (1983).

ation in which the terms of her orders had not been fulfilled. A circuit court has the authority to enforce its prior orders. *See Stilley v. Ft. Smith Sch. Dist.*, 367 Ark. 193, 238 S.W.3d 902 (2006). Thus, subsection (e)(1) should not be read to preclude a circuit court from exercising this kind of judicial authority.

Secondly, our courts have crafted an exception to the rule that a circuit court loses jurisdiction to act once the record is lodged on appeal. In child-custody and child-support cases, the circuit court retains jurisdiction to modify prior orders. *See Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997). By analogy, a guardianship case, like a child-custody or child-support case, involves ongoing events in the life of a person who is dependent on the court for protection. The court must continually exercise its powers, where changed conditions warrant, to safeguard those persons whose needs cannot wait a year or more while an appeal makes its way through the courts. In the case at bar, the circuit court faced changed circumstances that called for immediate action, despite the pendency of the appeal. Donald had not admitted Kristin to Bridgeway within ten days as instructed, and Kristin remained without treatment for more than two months after entry of the court's orders. The court held hearings on March 5 and 6, 2009, and discovered that Donald had left Kristin alone at his house while he and his wife were on a three-week cruise. Recalling Dr. Deyoub's diagnosis of Kristin and his strong recommendations for her evaluation and treatment, the court found that Kristin was a danger to herself or others and must be transported to Bridgeway. Thereafter, the court filed the necessary orders to remove the noncompliant guard-

ian, restrict his access to his former ward, and appoint a new guardian. Given the circumstances in this case, we hold that the circuit court acted within its authority.

### III. *Court's "assumption" of Kristin's incompetence*

Donald argues under this heading that, at no time prior to March 19, 2009, did the court declare Kristin legally incompetent. Rather, he says, the court simply assumed that she was incompetent and erroneously referred to her as incompetent in several prior orders. Donald does not, however, direct us to the particular orders in which this occurred. Further, he cites no authority and makes no convincing argument on this point. We do not address arguments that are not supported by convincing argument or authority. *Foster v. Foster*, 2010 Ark. App. 594, 377 S.W.3d 497. In any event, we cannot say that the circuit court merely "assumed" that Kristin was incompetent, given Dr. Deyoub's testimony that Kristin was not competent due to mental illness.

### IV. *Appointment of Kimberly Hill as guardian*

Donald argues that the circuit court committed several errors in appointing Kimberly Hill as Kristin's guardian. First, he contends that Kimberly had a conflict of interest with Kristin because Kristin had sued Kimberly in United States District Court for outrage, abuse of process, fraud, and other causes of action. The federal court ruled, however, that Kristin was not a real party in interest to the lawsuit and dismissed the case. *Kuelbs v. Hill*, 2009 WL 1706909 (W.D.Ark.2009). The Eighth Circuit affirmed that ruling on appeal. *Kuelbs v. Hill*, 615 F.3d 1037 (8th Cir.2010).[5]

---

**5.** Donald also claims that Ark.Code Ann. § 28–65–203(i) (Repl.2004), required the circuit court to find that any potential conflict of

interest between Kimberly and Kristin was "insubstantial." That statute applies only to the appointment of a temporary guardian.

■ Donald additionally points out that Dr. Deyoub's report rejected Kimberly as a candidate for guardianship. In fact, Dr. Deyoub recommended that no family member be appointed as Kristin's guardian. But, when the court was forced to relieve the independent third party initially appointed as guardian due to Kristin's lack of cooperation, the court appointed Donald and, after removing him, appointed Kimberly. Given this sequence of events, we cannot say that the court erred in appointing Kimberly after attempting other alternatives.

■ Donald also argues that the circuit court should have held a hearing to determine Kimberly's qualifications as a guardian and should have made specific factual findings regarding her suitability. He relies on Arkansas Code Annotated section 28–65–203 (Repl.2004), which sets forth the qualifications for a guardian; but, nothing in that statute mandates a hearing or specific factual findings on the question of a guardian's ability to serve. Nor are such requirements set forth in Arkansas Code Annotated section 28–65–210 (Repl.2004), which provides that the circuit court must be "satisfied" that the person to be appointed guardian is qualified and suitable. Moreover, the record as abstracted does not indicate that the circuit court ever refused any request by Donald to hold an evidentiary hearing or issue findings of fact on this matter. We therefore see no basis for reversal.

■ Next, Donald contends that the circuit court erroneously committed Kristin to Bridgeway without evidence that she was a danger to herself or others, as required by Arkansas Code Annotated section 20–47–214(b)(2) (Supp.2009). Donald raises this argument for the first time on appeal. Therefore, we will not consider it. *See Campbell v. State*, 311 Ark. 641, 846 S.W.2d 639 (1993) (refusing to consider an argument raised for the first time on appeal in an involuntary-commitment case). Donald also claims that Kristin should have received statutory notice, pursuant to Arkansas Code Annotated section 20–47–211 (Repl.2001), that she had a right to effective assistance of counsel; to be present at hearings and other significant stages of the proceedings; to present evidence and cross-examine witnesses; to remain silent; and to review all petitions, reports, and documents in the court file. This argument is also barred because it was not raised in the circuit court. *Campbell, supra*. We do note, however, that Kristin was represented by her attorney ad litem at the March 2009 hearings.

Finally, we address Donald's assertion that the circuit court refused to allow him to take Kimberly's deposition. We disposed of that argument in *Kuelbs I*, ruling that the court's order prohibiting Kimberly's deposition on April 14, 2008, did not deprive Donald of the opportunity to take the deposition at a later date.

### V. *Due process*

Donald asserts that he was deprived of due process of law because the circuit court was biased against him and should have recused. We held in *Kuelbs I* that the circuit judge demonstrated no bias and acted thoughtfully and respectfully during the proceedings. We see no evidence in this record that the court acted otherwise in its subsequent rulings. The court's adverse rulings against Donald are not grounds for recusal. *See Turner v. Nw. Ark. Neurosurgery Clinic*, 91 Ark.App. 290, 210 S.W.3d 126 (2005).

Donald also appears to argue that the circuit court held the March 2009 hearings without notice to him and without his presence. Both Donald and Kristin, however, were represented by counsel at the hearings, and counsel made no motion for a

continuance or objection to Donald's or Kristin's lack of attendance.

### VI. *Remaining arguments*

Donald's remaining arguments, which are scattered throughout his brief, involve matters that are either unsupported by sufficient argument or authority; were resolved in *Kuelbs I;* or are outside the record in this or prior appeals. We therefore affirm those arguments summarily.

### VII. *Kimberly's motion for sanctions*

Kimberly asks us to award sanctions on the ground that Donald's appeal is frivolous. We denied her motion for dismissal and sanctions on September 1, 2010, and decline to revisit our ruling.

Affirmed.

VAUGHT, C.J., and HENRY, J., agree.