Cite as 2022 Ark. App. 135

# ARKANSAS COURT OF APPEALS
## DIVISION III
#### No. CV-21-87

| | |
|---|---|
| CODY TACKETT AND TONI TACKETT WOMBLE<br><br>APPELLANTS<br><br>V.<br><br>AMY FREEDMAN, SPECIAL ADMINISTRATRIX OF THE ESTATE OF JOHN Z. TACKETT, JR., DECEASED; MILLER-CLABORN OIL DISTRIBUTING COMPANY, INC.; AND MELISSA TACKETT<br><br>APPELLEES | Opinion Delivered March 16, 2022<br><br>APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67PR-20-7]<br><br>HONORABLE CHARLES A. YEARGAN, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

This is an interlocutory appeal from the November 23, 2020 Sevier County Circuit Court order approving the settlement of the creditor's claim filed by separate appellee Miller-Claborn Oil Distributing Co., Inc. ("Miller-Claborn"), against the estate of John Z. Tackett, Jr. Appellants Cody Tackett and Toni Tackett Womble appeal, arguing that the circuit court erred in finding that the agreement was in the best interest of the estate. We affirm.

John Tackett died intestate on August 4, 2019. He is survived by his spouse, Melissa Tackett, and two adult children, Cody Tackett and Toni Tackett Womble. Miller-Claborn is a commercial oil company authorized to do business in the state of Arkansas. It provided goods to John Tackett and his businesses but failed to receive payment therefrom. It

originally sued John Tackett, among others associated with the businesses, in 2015 for breach of contract. On January 29, 2020, the owner of Miller-Claborn filed a petition for appointment of special administratrix of the estate in this case. Per the petition's request, the circuit court appointed Amy Freedman as temporary administratrix. According to a motion filed by Freedman, Miller-Claborn filed a sixth amended complaint in its breach-of-contract case naming "Amy Freedman as the Administratrix of the Estate of John Z. Tackett, Jr.," as a defendant after John's death. The fifth amended complaint (which was incorporated with the sixth amended complaint) was attached to the motion. The complaint alleged in part,

20. It was during the pendency of this litigation that Plaintiff learned of the abhorrent scheme devised by John Tackett, and which Cody Tackett joined once becoming of age, in an attempt to avoid making payments on their obligations and defraud creditors of payment that was rightfully owed to them. The scheme involved moving assets from one to the other of each of the named individual Defendants as well as the named Defendant corporations: TTC, which was filed with the Arkansas Secretary of State in 1990; RRSG, which was filed with the Arkansas Secretary of State in 2003; CST, which was filed with the Arkansas Secretary of State in 2011; S.W.A.T. which was filed with the Arkansas Secretary of State in 2012; Synergy which was filed with the Arkansas Secretary of State in 2014; and more recently discovered HWY. 71 Trucking, LLC, which was filed with the Arkansas Secretary of State in 2012; and JZT's HWY 71 Trucking, LLC, which was filed with the Arkansas Secretary of State in 2019. It should be noted that as of the date of this filing, the majority of these companies' status has been revoked by the Arkansas Secretary of State for failure to pay their franchise tax.

21. John Tackett's daughter, Toni Womble, has recently testified as to the veracity of the allegations that John Tackett was involved in the above described scheme whereby he would shuffle assets through the above listed shell companies to avoid creditors. An example or examples of said transfers of assets involves John Tackett's widow, Melissa Tackett, who joined in on this nefarious scheme by transferring assets to herself individually or some of the above listed companies.

On May 13, 2020, Melissa Tackett filed a petition for removal of special administratrix and nominated Centennial Bank to serve as personal representative. Miller-Claborn objected to this nomination. Cody and Toni filed a response to Melissa's nomination claiming that Melissa was selling property belonging to John's estate without authorization and requesting the court to appoint a general administrator at its discretion. On June 8, Melissa withdrew her petition, and Amy Freedman remained the administratrix.

On July 13, Miller-Claborn filed a claim against the estate for $552,564.49. On October 30, Cody, in his personal capacity, filed a claim against the estate for $732,654.74. He alleged that John owned or controlled two entities—TTC, Inc., and Red River Sand and Gravel, Inc.—and that his father caused those entities to incur improper debts in the total amount of $1,456,777.20.[1] Cody alleged that John had placed these corporations in Cody's name, which indebted him. Cody claimed that he paid approximately half the debts owed from his personal capital but that the two corporations remain liable to him for $732,654.74.

On November 20, 2020, the court conducted a hearing on the proposed settlement between Melissa Tackett, Highway 71 Trucking, Miller-Claborn, and the estate. The court heard arguments from counsel and no witnesses testified. The settlement letter presented to the court provided that the estate would pay Miller-Claborn $125,000 in addition to quitclaiming property to it. Melissa Tackett and Highway 71 Trucking would pay $250,000. In return, Miller-Claborn agreed to dismiss with prejudice all its claims against the parties.

---

[1]These two entities are separate defendants in Miller-Claborn's suit, and this amount includes the Miller-Claborn debt.

The attorneys acknowledged that there were not enough assets in the estate to cover both Miller-Claborn's and Cody's claims. The parties to the settlement argued this claim took precedence over Cody's claim because his claim did not have the same authenticity or validity as the Miller-Claborn claim that had been fleshed out and litigated since 2015.[2] After hearing arguments from counsel, the court announced,

> [S]o I'm going to consider this as a request for the claim of Miller-Claborn to be approved. It's been signed off by the attorney for the estate and the special administrator, and having no objections by Melissa Tackett, who is the widow, and is in agreement with that, I'm in favor of admitting the claim and that it be paid in accordance with the settlement record.

On November 23, the court entered an order approving settlement incorporating the letter memorializing the settlement. Cody and Toni filed a notice of appeal that same day.

This court reviews probate proceedings de novo on the record, but we will not reverse the decision of the circuit court unless it is clearly erroneous. *Ashley v. Ashley*, 2016 Ark. 161, at 9, 489 S.W.3d 660, 666. This court will not overturn the circuit court's factual determinations unless they are clearly erroneous. *Id.*, 427 S.W.3d at 21. However, no deference is given to the circuit court on matters of law. *Id.*, 427 S.W.3d at 21.

The circuit court's approval of a settlement of claims is governed by Arkansas Code Annotated section 28-50-112 (Repl. 2012) which states,

> When a claim against the estate has been filed or suit thereon is pending, if it appears to be in the best interest of the estate and subject to the court's authorization or

---

[2]The circuit court scheduled a hearing on Cody's creditor's claim for December 29, 2020; Cody filed for bankruptcy the day before the scheduled hearing. The court ultimately denied the claim.

approval, the creditor and personal representative may compromise the claim whether due or not due, absolute or contingent, liquidated or unliquidated.

Cody and Toni first argue that there was insufficient evidence supporting the approval of the settlement agreement. They contend that only the arguments of counsel were presented at the approval hearing and that arguments of counsel are not evidence. They also assert that the court's finding did not have an adequate foundation and was based on speculation and conjecture because Miller-Claborn's pending lawsuit was undetermined, and the court did not have proper knowledge of the facts involved.

The court had knowledge that Miller-Claborn had a pending suit against the estate for $552,564.49 that had been going on for five years. This claim was supported by an affidavit from the president of Miller-Claborn. The court was also aware of Cody's claim filed eight days before the six-month notice-to-creditors deadline per Arkansas Code Annotated section 28-50-101(a)(1) (Repl. 2012). This claim was also supported by an affidavit. Further, the court had before it evidence that the settlement was accepted and approved by both the special administrator and John's widow, Melissa. The court acknowledged that the estate was being sued for significantly more than the value of the assets in the probate estate. Presented with all this, the court found that Miller-Claborn's offer to settle for $125,000 and the quitclaim to it of a piece of property was in the best interest of the estate. The settlement amount is less than what the estate was potentially liable for in the civil suit. Accordingly, we cannot say the court erred in approving the settlement.

Cody and Toni claim that it was not a foregone conclusion that the civil litigation would be unfavorable to them because there had been neither a jury trial nor a final order entered in the case. They cite *Ashley v. Ashley*, 2016 Ark. 161, 489 S.W.3d 660, to support their assertion that observed claims may not be based on speculation of how a court may rule and that a court must exercise extreme diligence in approving a settlement. In *Ashley*, the supreme court affirmed a court's approval of a settlement agreement that found that the settlement was in the best interest of the estate of the decedent. In reaching this conclusion, however, the supreme court did not delve into the legitimacy of the pending claims, nor did it establish factors that should be taken into consideration. Instead, it determined that the settlement was in the best interest of the estate on the basis of specific facts of the case. Consequently, we are not persuaded by Cody and Toni's assertion that the court erred because the outcome of the civil litigation is unknown.

Next, Cody and Toni argue that the record does not support the conclusion that the settlement satisfied the best interest of the estate. They argue that the court's approval was premature because Arkansas Code Annotated section 28-50-112 presupposes that the estate claims and assets are before the court, which was not the case here because Cody and Toni had a pending challenge to the inventory and accounting of the estate. However, they do not cite any supporting authority.

As touched on above, this area of the law lacks factors or definitive guidelines that a circuit court should look to in determining whether a settlement is in the best interest of the estate. Therefore, we must rely on the plain language of the statute. Miller-Claborn presented

6

its claim to the personal representative of the estate in accordance with section 28-50-104 (Repl. 2012); negotiated with the estate's representative; reached a compromised settlement agreement; and presented it for approval to the circuit court. Additionally, the underlying claims were before the same court as the case at hand; thus, the court had five years of background experience with the underlying claims. The plain language of the statute does not support Cody and Toni's contention that the approval was premature. Given this record, the circuit court did not clearly err in concluding that the settlement of this claim was in the best interest of the estate.[3]

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Arnold & Arnold*, by: *Stephen T. Arnold*; and *Robert S. Tschiemer*, for appellants.

*Norton Wood Floyd*, by: *Marshall C. Wood* and *Richard J. Kroll*, for separate appellee Miller-Claborn Oil Distributing Co., Inc.

---

[3]In acknowledging the lack of caselaw in this area, the appellee suggests looking to the factors considered in bankruptcy law in approving proposed settlements. *See In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997). While persuasive, it is unnecessary here given the facts at hand.